**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATE GROFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 07-CV-191 |
| | ) | |
| JACK ARNOLD DEMPSEY, | ) | District Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's motion for summary judgment as to Count I (breach of a partnership agreement) of Plaintiff's complaint [51]. For the following reasons, the Court grants Defendant's motion for summary judgment on Count I of Plaintiff's complaint.

**I.    Background**

   **A.    The Personal Relationship**

Plaintiff Kate Groff and Defendant Jack Dempsey met in New York in August 2000. In March 2002, Groff moved from New York to Illinois and began living with Dempsey at his residence at 1 West Superior in Chicago. The two lived together, at various residences, from March 2002 until January 2005.[1] On the morning of January 12, 2005, Dempsey and Groff got into a physical altercation. Later that same day, the police arrested Groff for battery. Groff and Dempsey did not reside together after that date. On January 10, 2007, Groff filed a complaint in this Court, alleging breach of a partnership agreement (Count I) and battery (Count II).

   **B.    The Business Relationship**

Groff testified that her business relationship with Dempsey began on the day that they met, in August 2000, when they became romantically involved. According to Groff, during this

---
[1] During this time, Dempsey was married and had commenced divorce proceedings.

rendezvous, Dempsey showed her blue prints of his house (the Stonegate property). Prior to Groff moving to Chicago, Dempsey discussed with her the purpose behind forming a limited liability company, and also told her about his plans to form Andalusian Enterprises LLC. Groff alleges that she and Dempsey "orally agreed to form a partnership which would acquire and/or develop real property." She submits that they agreed to be "equal partners, sharing ownership of the properties and profits and losses equally." Groff further alleges that Dempsey breached the oral agreement by failing to provide her with fifty percent ownership share of the properties, in addition to failing to pay her for profits derived from the sale or improvements to the property owned by the partnership.

Groff testified that the alleged partnership at issue in Count I was created in the Spring of 2002 when Dempsey formed the two LLCs (Andalusian Enterprises and Fairway Ventures). Fairway Ventures, LLC began operating with Dempsey as the sole documented member on April 12, 2002. Dempsey made an initial capital contribution of $2,125,000 by way of assignment of his interest as a beneficiary in a land trust holding title to the property at 48 E. Cedar in Chicago. On May 21, 2002, Andalusian Enterprises, LLC began operating with Dempsey as its sole documented member.[2] Dempsey made an initial capital contribution of $10,000. The operating agreements for both Fairway Ventures and Andalusian Enterprises provide that they have one manager, Dempsey, and do not state that Groff is a member or manager. Neither party has presented a certificate of participation evidencing Groff's ownership of any part of Andalusian Enterprises or Fairway Ventures, nor has either side produced evidence that Groff purchased any units of either LLC. Based on the evidence submitted by the parties, the alleged oral partnership

---

[2] Dempsey signed the operating agreement on April 12, 2002, and on May 14, 2002, he signed Andalusian Enterprises' Articles of Organization.

was never reduced to writing. Rather, Groff claims that Dempsey told her she owed fifty percent of each LLC.

According to Groff, the oral partnership owned the following five parcels of real estate: (1) 3535 Patten, Unit 4A, Highland Park, Illinois, 60035; (2) 55 Stonegate, Lake Forest, Illinois, 60045; (3) 48 East Cedar, Chicago, Illinois, 60611; (4) 75-6040 Alii Drive, Royal Sea Cliff Condominiums, Unit 108, Kailua-Kona, Hawaii; and (5) the vacant Lot 111 in the Hokulia Development, Kailua-Kona, Hawaii. See *infra* Section I.C. Groff claims that she and Dempsey agreed that the partnership would continue for as long as it remained profitable. According to Groff, Dempsey would acquire and sell the properties and she would locate, renovate, and develop the properties.[3] She intended to develop each property within a year.[4] In her deposition she testified that "[t]he LLC is the partnership and the LLCs going forward" and that she "anticipated that it would go forward more than a year," but that she did not know how long the partnership was supposed to last. From July 2004 to December 2004, Groff received bi-weekly paychecks of $2,800 from Andalusian Enterprises. She also received two bonuses of $50,000 each, one in 2003 and one in 2004. In the year 2004, Groff's taxed wages received from Andalusian were $79,166.69.

### C. The Properties

On May 6, 2002, the North Star Trust 02-4431 purchased 48 East Cedar, Chicago, Illinois, from the Deborah Ann Vinson Living Trust. The beneficiary of the North Star Trust 02-4431 is Fairway Ventures, LLC. Fairway Ventures' only asset is its beneficial interest in the North Star Trust 02-4431. Jack Dempsey is the sole member listed on Fairway Ventures' operating agreement. At the Cedar property, Groff picked the wall coverings and spoke with the

---

[3] In Groff's terms, "I was the worker. He was the wallet." Groff Dep. at 232.

[4] None of the properties was sold within a year of being purchased.

3

various professionals and designers about remodeling, including Linda Rosul (gardener), Joe Ponce de Leon (construction), Paul Heath (audio-video and security), ADT, Expo Design Center, Loose Ends, Barry Wachtel (woodworker), Robert Sellers (architect), and an electrician.

On June 21, 2002, North Star Trust 02-4631 purchased 3535 Patten, Unit 4A, Highland Park, Illinois, from The Ravines Condominium Phase I Venture LLC. The sole beneficiary of North Star Trust 02-4631 is Jack Dempsey. The work that Groff performed in connection with the Patten property consisted of ordering furniture from Crate and Barrel, arranging to have it painted, meeting with window treatment and carpet people, dealing with Blue Line Painting about installing lighting and a dropped ceiling, cleaning, decorating for the holidays, and calling a repairman to fix the washing machine. On January 17, 2006, the North Star Trust 02-4631 sold the Patton property to the Emily M. Chappuie Revocable Trust.

On November 8, 2000, the Boxer I Trust purchased 55 Stonegate, Lake Forest, Illinois, from Chantal Porter Martinet.[5] Jack Dempsey currently is the trustee and sole beneficiary of the Boxer I Trust, as he was at the time that the Stonegate property was purchased. The work that Groff claims she did at Stonegate consisted of her being consulted about building plans, sleeping overnight at the property to prevent Dempsey's wife from burning the house down, meeting with the architect (while Dempsey was present), the builder's employees, and horticulturists, and ordering furniture, wallpaper, draperies, and lighting.

On December 17, 1999, Jack Dempsey purchased a vacant lot (Lot 111) in the Hokulia Development, Kailua-Kona, Hawaii, from 1250 Oceanside Partners. Groff met with landscape

---

[5] The Boxer I Trust is a trust agreement in which Dempsey is the trustee and beneficiary during his life. The trust agreement provides that the trustee will hold Dempsey's personal property and directs the trustee to make certain gifts on Dempsey's death. The Boxer I Trust was executed on November 8, 2000. On January 29, 2004, Dempsey executed the First Amendment to the Boxer I Trust. Among other things, the First Amendment provides that in the event of Dempsey's death, he would leave Groff the lesser of eight million dollars or ten percent of his net estate. On January 12, 2005, Dempsey executed the Second Amendment to the Boxer I Trust. The Second Amendment makes no gifts to Groff on Dempsey's death.

architects and vendors on the Hokulia project. No construction ever occurred because of zoning problems.

On February 13, 2002, the Boxer Trust I purchased 75-6040 Alii Drive, Royal Sea Cliff Condominiums, Unit 108, Kailua-Kona, Hawaii. Groff chose furniture, outdoor furniture, bedding, and linens for the property.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

### B. Statute of Frauds

Groff claims that she formed an oral partnership with Dempsey that entitles her to one-half the profits of the alleged partnership and one-half ownership of five properties. The issue before the Court is whether the oral partnership agreement falls within the Illinois Statute of Frauds. Illinois has codified the "Statute of Frauds" in three places requiring certain types of agreements to be in writing to be enforceable: (1) agreements relating to executorship, suretyship, marriage, and performance over one year (see 740 ILCS 80/1); (2) agreements for the transfer of an interest in land (see 740 ILCS 80/2); and (3) agreements for the sale of goods over $500 (see 740 ILCS 5/2-201). Dempsey argues that this case triggers two areas of the Statute of Frauds – that the alleged oral agreement is void because it was to be performed over more than one year and, alternatively, that it is void because it involves the transfer of an interest in real estate.

#### 1. One Year Provision

Section 1 of the Statute of Frauds provides: "No action shall be brought * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith." 740 ILCS 80/1. Oral contracts are barred by the statute unless the contract is "capable of being fully performed within one year." *Cohn v. Checker Motors Corp.*, 599 N.E.2d 1112, 1116 (Ill. App.

1st Dist. 1992). The Illinois Supreme Court has explained the purpose behind the Statute of Frauds as follows:

> The period of one year, although arbitrary, recognizes that with the passage of time evidence becomes stale and memories fade. The statute proceeds from the legislature's sound conclusion that while the technical elements of a contract may exist, certain contracts should not be enforced absent a writing. It functions more as an evidentiary safeguard than as a substantive rule of contract. As such, the statute exists to protect not just the parties to a contract, but also – perhaps more importantly – to protect the finder of fact from charlatans, perjurers and problems of proof accompanying oral contracts.

*McInerney v. Charter Golf, Inc*., 680 N.E.2d 1347, 1351 (Ill. 1997).

In the present case, Groff alleges that she and Dempsey entered into an oral agreement, extending from 2002 until 2005, to acquire and develop real property.[6] Groff testified that she thought the alleged partnership would last for more than one year: "The LLC is the partnership and the LLCs going forward, I anticipated that it would go forward more than a year." Groff Dep. at 201. She also testified that she hoped the partnership "would last as long as we were making a profit. As long as possible." *Id*. at 205. Other than Groff's expectations, Dempsey has not offered any evidence to establish that the partnership necessarily would last longer than a year. Conversely, Dempsey admitted in his reply brief that "it is possible that the five properties at issue could have been developed and/or acquired within one year." Reply Br. at 4. Clearly, neither Groff nor Dempsey knew how long the alleged partnership would last, thus making it an oral agreement of "uncertain duration."

Citing *McInerney v. Charter Golf, Inc.*, Dempsey argues that a contract of uncertain duration would be barred by the Statute of Frauds if the contract "anticipates a relationship of

---

[6] For the purposes of reviewing the statute of frauds argument, the Court assumes the existence of an oral agreement. See *Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 927-28 (affirming district court's decision that, even assuming that the court had found that there was an oral agreement between the parties, the Illinois Statute of Frauds would invalidate the agreement because the contract was not performable within one year); see also *Solaia Technology LLC v. ArvinMeritor, Inc.*, 2006 WL 695699, at *10 (N.D. Ill. March 16, 2006).

7

long duration." 680 N.E.2d at 1351. In *McInerney*, the court carved out an exception in the context of lifetime employment contracts, finding that a lifetime employment contract "is, in essence, a permanent employment contract [inherently anticipating] a relationship of long duration – certainly longer than one year" and thus subject to the Statute of Frauds' writing requirement. 680 N.E.2d at 1351-52. *McInerney* does not appear to address all contracts of indefinite duration. See, *e.g.*, *Czpala v. Commerz Futures Inc.*, 114 F. Supp. 2d 715, 719-20 (N.D. Ill. 2000). Instead, the Restatement and courts following it indicate that "the enforceability of a contract under the one-year provision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities." Restatement (Second) of Contracts § 130, Comment a (1981). Rather, "if performance is possible by its terms within one year, the contract is not within the statute regardless of how unlikely it is that it will actually be performed within one year." Restatement (Second) of Contracts § 130.

Dempsey has not presented sufficient evidence to establish that it would be impossible to perform the alleged oral agreement within one year. See *Hartbarger v. SCA Services, Inc.*, 558 N.E.2d 596, 606 (Ill. App. Ct. 1990) (acknowledging that under Illinois law on the Statute of Frauds, "a contract is unenforceable only if it is impossible to perform the contract within one year"). In fact, Dempsey even agreed in his brief that it was "possible" that the properties at issue could have been developed within one year. Moreover, the nature of the contract in this case does not involve performance that would necessarily last longer than one year. *Cf. Trustmark Ins. Co. v. General Cologne Life Reinsurance of America*, 2001 WL 1268539, at *10 (N.D. Ill. Oct. 22, 2001) (finding statute of frauds applicable where that alleged joint venture to reinsure 7,000 IDI policies "[b]y [its] very nature" pertained to long term contracts that would necessarily last longer than one year); *Taimoorazy v. Bloomington Anesthesiology Service Ltd.*,

122 F. Supp. 2d 967 (C.D. Ill. 2000) (employment contract contemplated a specific duration of two years). While the Court acknowledges that it was unlikely – especially with the downturn in the real estate market in recent years – that the parties could have developed these properties and turned a profit in one year, it certainly was possible. Therefore, the alleged oral agreement is not barred by the one year provision found in 740 ILCS 80/1.

### 2. Interest in Land

Dempsey also contends that Section 2 of the Statute of Frauds bars the oral agreement because the alleged partnership involves the sale of real estate. See 740 ILCS 80/2. Any agreement providing for the sale of land or for an interest in land for a term longer than one year, which is not in writing, is not enforceable. *Id.*

"An agreement for a partnership for the purpose of dealing and trading in lands for profit is not within the statute of frauds, and the existence of the partnership and the extent of each party's interest in it may be shown by parol." *Fitch v. King*, 116 N.E. 624 (Ill. 1917). From the rule of law espoused in *Fitch*, Groff argues that the alleged partnership agreement need not be in writing to show her ownership interest in property acquired by the partnership. However, Groff's argument ignores a distinction in the case law between alleged partnership property purchased before the agreement was entered into and property purchased after the alleged partnership was formed. "There is a wide distinction, however, between an agreement for one to become interested in the profits of certain land already purchased and owned by another and an agreement to share in the benefits to be derived from lands to be thereafter acquired." *Goldstein v. Nathan*, 42 N.E. 72 (Ill. 1895). Building on the court's pronouncement in *Goldstein*, subsequent Illinois decisions hold that the Statute of Frauds applies to a joint venture agreement if the partners agree to share the proceeds of the sale of land that is owned by one partner alone.

See *B and B Land Acquisition, Inc. v. Mandell*, 714 N.E.2d 58, 62-63 (Ill. App. Ct. 2nd Dist. 1999); see also *Roti v. Roti*, 845 N.E.2d 892, 896 (Ill. App. Ct. 1st Dist. 2006) (holding that an agreement to convey to plaintiff ten percent of defendant's interest in land, by way of an alleged partnership agreement, is an agreement for the transfer of an interest in real estate within the meaning of the Statute of Frauds). The reasoning behind the rules adopted in those cases is logical. When two individuals agree to form a partnership that will deal in land, no interest in land changes hands; they agree that the partnership will purchase land and share profits in the future. However, when individuals agree that, as part of a partnership agreement, one partner will gain an interest in land owned by the other, a transfer of real estate occurs.

In the present case, Groff submits that she and Dempsey agreed to be "equal partners, sharing ownership of the properties and profits and losses equally." She further contends that Dempsey breached the oral agreement by failing to provide her with fifty percent ownership share of the properties, in addition to failing to pay her for profits derived from the sale or improvements to the property owned by the partnership. And in her deposition, she testified that "I was told when the partnership was formed that I would be on the title of the properties as owner." Groff Dep. at 214. The oral agreement, as contemplated by Groff, clearly calls for Dempsey to convey to Groff an interest in real estate owned by Dempsey.

At a minimum, Dempsey owned the Stonegate, Royal Sea Cliff, and Hokulia properties prior to the alleged formation of the partnership in the Spring of 2002.[7] Groff now asserts that

---

[7] Stonegate was purchased on November 8, 2000; Royal Sea Cliff was purchased on February 13, 2002; and Hokulia was purchased on December 17, 1999. Although two of the properties (Stonegate and Royal Sea Cliff) were purchased by the Jack A. Dempsey Boxer I Trust (rather than Jack Dempsey, the individual), Dempsey was the trustee and sole beneficiary during his lifetime of the entirely revocable Boxer I Trust. See *Kobialka v. Cosmopolitan Nat. Bank of Chicago*, 406 N.E.2d 150, 152 (Ill. App. Ct. 1st Dist. 1980) (Statute of Frauds applied because "although the subject of the contract is property held in a land trust, the contract contemplated the conveyance of a deed to that real estate"); *IMM Acceptance*

three properties, in addition to the later-purchased Cedar and Patten properties, are owned either by the partnership or that each of them owns a fifty percent interest in the properties. That claim necessarily involves a transfer of an interest in real property. The Court finds that an agreement to convey a fifty percent interest in real property is an agreement for the sale of land falling within the Statute of Frauds.

Groff argues that even if the Statute of Frauds bars the oral agreement to transfer land that Dempsey owned before the alleged agreement, the Court should enforce the agreement as to the properties acquired by Dempsey after the agreement because each property was "separate and independent." In support of her position, Groff cites *Pond v. Sheean*, in which the court held:

> "It will, however, be observed that complainant seeks by her bill to recover personal property as well as real estate; and it may be claimed that as to the personal property the agreement is not within the statute. The contract, however, must be regarded as an entirety; and, if void as to real estate, it must also be held void as to personal property. This is a rule of law well established."

*Pond v. Sheean*, 23 N.E. 1018 (Ill. 1890). However, this language appears to cut against Groff's argument, indicating that contracts should be regarded as "an entirety." In any event, it certainly does not assist her position. "[W]hen promises that are not within the statute of frauds are coupled with one that is, the entire contract is unenforceable unless the promises are divisible." *Parks v. Kubacki*, 1987 WL 16599, at *2. In this case, Groff's complaint and testimony make clear that she alleges that there was one partnership agreement. She does not argue that they negotiated and formed a new agreement each time that Dempsey purchased a property. Nor does she contend that Dempsey breached five separate promises. Because the claimed agreement contemplated the transfer of an interest in real estate, the entire alleged agreement is barred by

---

*Corp. v. First Nat. Bank and Trust Co. of Evanston*, 499 N.E.2d 1012, 1014-16 (Ill. App. Ct. 2d Dist. 1986) (Statute of Frauds is applicable to the transfer of a beneficial interest in an Illinois land trust).

11

Section 2 of the Statute of Frauds, unless Groff can demonstrate that an exception applies.[8] See also *Midwest Mfg. Holding, LLC v. Donnelly Corp.*, 975 F. Supp. 1061, 1068 (N.D. Ill. 1997).

### a. Partial performance

"Although acts of partial performance are typically sufficient to take an oral agreement out from under the operation of the Statute of Frauds in an action at equity, such acts do not take an action at law outside the operation of the Statute of Frauds." *Cohn v. Checkers Motor Corp.*, 599 N.E.2d 1112, 1117 (Ill. App. Ct. 1st Dist. 1992); see also *Cain v. Cross*, 687 N.E.2d 1141, 1144 (finding doctrine of part performance not to apply when plaintiff filed an action at law seeking money damages); *Glennon v. Village of South Barrington*, 2002 WL 423681, at *2 (N.D. Ill. Mar. 18, 2002). Groff's complaint seeks damages for Dempsey's alleged breach of contract. She does not seek equitable relief and would not be entitled to any equitable relief. See *John O. Schofield, Inc. v. Nikkel*, 731 N.E.2d 915, 925 (Ill. App. Ct. 5th Dist. 2000) (equitable relief available only when plaintiff cannot be made whole by damages or another adequate remedy at law). "The rendition of personal services, the value of which may be pecuniarly estimated or which can be adequately compensated at law, will not remove from the operation of the statute of frauds an oral contract to convey an interest in land in exchange for such services." *Id*. at 926. Thus, Groff's claim for damages in Count I prohibits any possible application of the part performance exception to the Statute of Frauds.

---

[8] Moreover, the Court is not convinced that the last two properties fall outside the Statute of Frauds because gaining an interest in the later acquired properties, purchased solely with Dempsey's money and in which title is held solely in Dempsey's name, would require that Dempsey transfer an interest in the properties to Groff.

### b. Full performance[9]

Groff also claims that her work with the five properties constituted "full performance" of her obligations under the alleged oral agreement and should take the agreement outside the operation of the Statute of Frauds. Full performance by one party may remove an oral agreement from the control of the Statute of Frauds. *Jimenez v. Jimenez*, 386 N.E.2d 647, 649 (1st Dist. 1979). As the Seventh Circuit has stated, "[u]nilateral performance is pretty solid evidence that there really was a contract – for why else would the party have unilaterally performed?" *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1183-84 (7th Cir. 1991); see also *Roti*, 845 N.E.2d at 897. On the other hand, when the party seeking to enforce an oral contract admits that she already has received compensation for her performance, Illinois courts "see no grounds for inferring that [she] must have had an oral contract for yet more compensation." *Roti*, 845 N.E.2d at 899 (in rejecting plaintiff's claim that the Statute of Frauds did not apply, court held that plaintiff's "performance of his duties as an employee does not present adequate grounds in these circumstances for finding an exception to the Statute of Frauds"); see also *Fowley v. Braden*, 122 N.E.2d 559, 563-64 (1954) (applying Statute of Frauds despite plaintiff's assertion that he fully performed where the court found the performance was merely minor services). "Furthermore, the party seeking the application of equitable principals to defeat the interposition of the statute of frauds must establish that the promise cannot be made whole by damages or by another adequate remedy at law." *John O. Schofield, Inc.*, 731 N.E.2d at 925.

Groff admitted that she was an employee of Andalusian Enterprises and received more than $129,000 in compensation in 2003 and 2004. She also lived with Dempsey at the various

---

[9] The case law is not clear on whether there is a distinction between part performance and full performance. See, *e.g.*, *John O. Schofield, Inc.*, 731 N.E.2d at 925-26; *Alguire v. Walker*, 506 N.E.2d 1334, 1338 (Ill. App. Ct. 1st Dist. 1987); *Thomas v. Moore*, 370 N.E.2d 809, 812 (Ill. App. Ct. 5th Dist. 1977). However, since the parties treat the issues separately, the Court will address them independently, although similar principles apply in each instance.

Chicago properties and performed many tasks that a resident or tenant would typically perform, such as picking out furniture and calling repairmen.[10] Even assuming that Groff's work could be attributed solely to the alleged partnership agreement, and not to Groff's personal relationship with Dempsey or to justify the compensation that she was paid by Andalusian, her work at best constitutes partial performance on an agreement. *C.f. Thomas v. Moore*, 370 N.E.2d 809, 812 (Ill. App. Ct. 5th Dist. 1977) (full performance found where purchaser of real estate paid full consideration, took possession of the land, and made lasting and valuable improvements to the property); *David v. Schiltz*, 114 N.E.2d 691, (Ill. 1953) ("Where, pursuant to an oral sale of land, the consideration is fully paid and possession given the purchaser, there is sufficient performance to take the agreement out of the Statute of Frauds").

### c. Admission of agreement

Groff also contends that the Statute of Frauds does not apply because Dempsey admitted that Groff was his "partner." Groff correctly states that the Statute of Frauds may be waived by an acknowledgement of the agreement and the substance thereof. See *R.J.N. Corp. v. Connelly Food Prods., Inc.*, 529 N.E.2d 1184, 1189 (Ill. App. Ct. 1st Dist. 1988); see also *McCollum v. Bennett*, 424 N.E.2d 90, 92 (Ill. App. Ct. 3d Dist. 1981). "[T]o waive the statute of frauds, the party seeking waiver must point to specific testimony by the charged party explicitly admitting the existence and the substance of the alleged agreement." *Trustmark Ins. Co. v. Gen. Cologne Life Reinsurance of Am.*, 2001 WL 1268539, at *10 (N.D. Ill. Oct. 22, 2001). Admitting that an

---

[10] As set forth in more detail in the factual background, Groff's work at the properties primarily consisted of picking out the wall coverings, window treatments, and carpet, talking to the various professionals and designers about remodeling, ordering furniture and linens, dealing with contractors about installing lighting and a dropped ceiling, cleaning, decorating for the holidays, calling repairmen, consulting on building plans, sleeping overnight at the property to prevent Dempsey's wife from burning the house down, meeting with Dempsey and the architect (but not directing the architect), meeting with the builder's employees, and meeting with horticulturists. Only one of the five properties sold.

14

agreement existed, but denying the plaintiff's version of the terms of the agreement, does not constitute a waiver of the Statute of Frauds defense. See *R.J.N. Corp.,* 529 N.E.2d at 1189.

The specific testimony that Groff identifies as Dempsey's waiver of the Statute of Frauds' defense is as follows:

> Q: So why would you have Kate fill out the documents related to Andalusian?
>
> A: I think she offered to help and I thought it would be – you know, she was my partner. We were boyfriend and girlfriend, and I was trying to get her involved in it.

Dempsey Dep. at 314. Groff relies on Dempsey's admission that she was his "partner." However, he immediately clarifies the statement, stating that she is his "girlfriend." Beyond that statement, Groff has not pointed to any testimony regarding the substance of the partnership – that it was an agreement to develop and sell real estate at a profit and that Groff would be provided with a fifty percent interest in the five properties. The Court cannot reasonably construe the use of the word "partner," followed by an explanation that Dempsey and Groff were "boyfriend and girlfriend," as an admission of a contract under the terms alleged by Groff.

### d. Existence of a writing

To be enforceable, agreements that fall within the Statute of Frauds must be in writing and signed by the party to be charged. See *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1351 (Ill. 1997). The writing must contain the agreement's essential terms and "must demonstrate that there has been an agreement as to the essential terms of the contract, evidencing a 'meeting of the minds.'" *Bower v. Jones*, 978 F.2d 1004, 1009 (7th Cir. 1992). In a final attempt to avoid the Statute of Frauds, Groff points to two documents that she claims contain the terms of the alleged agreement and thereby overcome the defense: (1) a Bank One document that authorizes Groff and Dempsey to write checks on behalf of Fairway Ventures; and (2) a 2005

draft of a settlement agreement that Dempsey presented to Groff, which she did not accept. Neither of these documents reflects the alleged agreements essential terms – that Groff would receive in interest in the five properties, that the parties would share the profits, or what the roles or duties of each partner would be. The Bank One document simply gives Groff the authority to write checks on behalf of one of the LLCs – something that an employee, not just a partner, often is able to do. And the settlement agreement (which does not contain any language that establishes the essential terms of the alleged partnership and which was never executed) is inadmissible as proof of Groff's claim. See Fed. R. Evid. 408 (offers of compromise are not admissible to prove the validity of a claim). Neither document operates to take the alleged agreement outside of the Statute of Frauds.

**III. Conclusion**

For these reasons, the Court grants Defendant's motion for summary judgment as to Count I of Plaintiff's complaint. Plaintiff's Count II (battery) remains pending before the Court.

Dated: February 11, 2008

                                              Robert M. Dow, Jr.
                                              United States District Judge